[No. 14803. Department One. June 17, 1918.]

NORTHWESTERN NATIONAL BANK OF PORTLAND,
*Respondent*, v. ALEXANDER PEARSON,
*Appellant.*[1]

BANKS AND BANKING — CONTRACTS — AGREEMENT FOR LOAN — EVI-
DENCE—SUFFICIENCY. The evidence sustains findings that a bank did
not agree to extend a credit of $50,000 to finance a contract, where
all the negotiations were with the bank's vice president, who testified
that he informed the contractor he could not make a loan in excess
of $10,000 without approval of the discount committee, that he
authorized a loan for $5,000 pending investigation and demand note
was given therefor, and it appears that the discount committee de-
clined to approve the credit and notice of such declination was
immediately given.

BILLS AND NOTES—ACTIONS—DEMAND. A demand is not a pre-
requisite to suit upon a demand note, made payable at the office of
the plaintiff bank, the bringing of suit being a sufficient demand.

Appeal from a judgment of the superior court for
King county, Ronald, J., entered January 11, 1918, up-
on findings in favor of the plaintiff, in an action on a
promissory note, tried to the court. Affirmed.

*Arthur C. Dresbach* and *Benton Embree,* for appel-
lant.

*Roberts, Wilson & Skeel,* for respondent.

MITCHELL, J.—This is an action on a $5,000 demand
note, given by appellant, defendant, to respondent.

The complaint is in the usual form, and alleged de-
mand and nonpayment. The answer admits the making
of the note, that respondent is the holder thereof, and
denies the other allegations of the complaint. Affirma-
tively, the answer gives a history of the making of the
note, and presents counterclaims to the effect that ap-
pellant is a general contractor and as such procured a

[1]Reported in 173 Pac. 730.

contract for the construction of viaducts and their approaches, etc., across certain streets of Portland, Oregon; that, needing funds to carry on the work, application was made to respondent, which is engaged in the banking business in Portland, Oregon, for a line of credit to the amount of $200,000, to be available as needed, which resulted in an agreement that the bank would finance the undertaking to the extent of $50,000, to be evidenced by demand promissory notes to be given from time to time as the money was furnished, payable only after the completion of the work; that the note in suit was given under such understanding; and that thereafter, depending upon respondent to supply funds, without fault of appellant, while appellant was engaged in the performance of his construction contract, respondent refused to further furnish money, to appellant's damage in the sum of $20,700, because otherwise unable to seasonably arrange to carry out an agreement already made for excavation and fill work at a price less than he was afterwards able to procure, because of advancing prices; and also other damages in the sum of $18,000 on account of being thus disadvantaged as to ready funds to provide for sand and crushed rock needed. By reply, all the affirmative matter in the answer is denied, except that the bank is located in Portland. There was a non-jury trial, resulting in findings, conclusions and judgment according to the demand of the complaint.

It is evident that if appellant has failed to prove the general oral contract with respondent for money as needed to the extent of $50,000, then there is no occasion to consider the alleged counterclaims, nor the many questions of fact and law suggested thereby.

Sometime after commencing the work in Portland, appellant first saw the bank, and at that time, on request, appellant furnished a financial statement which

was used by the bank for its investigations in addition to ascertaining ratings by the mercantile agencies; and about a week later, April 7, the investigations of the bank still going on, plans had progressed so far that Mr. Olmstead, vice president of the bank, on learning that appellant had to leave that day or the next for Iowa, furnished him with blank notes and checks for use of appellant's Portland office. Appellant claims that he was at that time promised $50,000 credit. Mr. Olmstead testifies that he told appellant he hoped to arrange the matter for him, but that, as an officer of the bank, he could not make a loan exceeding $10,000 without securities, and that this proposed credit of $50,000 would have to be authorized by the discount and loan committee of the bank, to which he would submit it at their next meeting; and that he supplied appellant with the blank notes and checks before leaving on his trip, for use during his absence in the event the credit was authorized by the bank's committee. Appellant left on his eastern trip on April 7 or 8, and on the 10th of April the bank's committee, at a regular meeting, considered this application for a $50,000 credit and decided to grant it upon proper securities being furnished. Appellant's financial standing was still being looked into by the bank. About April 14, the note in suit was delivered to the bank by Roy Johnson, the head man and the one in charge of appellant's Portland office, and the amount was placed to the credit of appellant's checking account. This loan of $5,000 was made, as Mr. Olmstead testifies, on his own responsibility as an officer of the bank, while the bank's discount and loan committee was yet considering the application for the $50,000 credit. Subsequently, on April 17, the bank's discount and loan committee further considered this application and declined to make the loan, and Mr. Olmstead immediately notified appel-

lant, who returned to Portland and was then advised by Mr. Olmstead that the committee was not satisfied with the securities offered. All of appellant's negotiations were with Mr. Olmstead.

The foregoing are the salient features of the proof in this case, and we are of the opinion that the trial court was right in determining that appellant failed to show a contract such as is alleged in the answer; and, among other things in the proof strongly inducing this view, is the fact that the note in suit, by its terms, is payable on demand, while confessedly it was thought at that date by the parties that the work would not be finished for a year or more.

The only remaining question raised by appellant is that of demand for payment of the note prior to bringing the suit. It is shown by the record that, on three different occasions after appellant returned from the east, respondent by letter demanded payment of this note, one of which letters was addressed to appellant at his address in Seattle according to directions as to his residence or place of business indorsed on the note at the time it was made, all three of which letters were in the possession of appellant and produced upon demand at the trial of this cause. Besides, remembering that the note in suit, by its terms, is made payable at the office of the bank, the law of this state is as expressed in the case of *Hardin v. Sweeney,* 14 Wash. 129, 44 Pac. 138, where we quoted from *Bridge Co. v. Perry,* 11 Ill. 467, as follows:

"Nor is a presentment necessary, on a bank note payable on demand at a particular place. The bringing of a suit is a sufficient demand of payment."

Finding no error in the record, the judgment will be affirmed.

MAIN, C. J., FULLERTON, PARKER, and TOLMAN, JJ., concur.